# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# COOKEVILLE DIVISION

| | |
|---|---|
| BONNIE EMERY, on behalf of herself and all others similarly-situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| HOME CAREGIVERS OF COOKEVILLE, LLC, KONSTANTIN YEPIFANTSEV, and JESSICA YEPIFANTSEV | ) ) ) ) |
| Defendants. | ) ) |

CASE NO._____

**COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT OF 1938**

Comes Plaintiff BONNIE EMERY ("Plaintiff"), on behalf of herself and all others similarly-situated ("Class Members"), and for their collective action complaint against Defendants HOME CAREGIVERS OF COOKEVILLE, LLC, KONSTANTIN YEPIFANTSEV, AND JESSICA YEPIFANTSEV, ("Defendants") allege the following:

### I. OVERVIEW

1. The Fair Labor Standards Act ("FLSA") was passed by Congress in 1938 to eliminate low wages and long hours and to correct conditions that were detrimental to the health and well-being of workers. To achieve its humanitarian goals and purposes, Section 7(a) of the FLSA "limits to 40 a week the number of hours that an employer may employ any of his employees subject to the Act, unless the employee receives compensation for his employment in excess of 40 hours at a rate 'not less than one and one-half times the regular rate at which he is employed.'" *Walling v. Helmerich & Payne,* 323 U.S. 37, 39 (1944)(citing 29 U.S.C. §207(a)).

2. This is a collective action brought pursuant to the FLSA by Plaintiff, on behalf of herself and all similarly-situated current and former non-exempt caregivers, who worked for

Defendants' during the 3 years preceding the filing of this complaint ("Recovery Period") and who: a) signed an agreement similar to the agreement Plaintiff signed attached hereto as <u>Exhibit 1</u>; or who b) provided extended 24 hour care while confined to one of Defendants' fully serviced Employment and Community First ("ECF") and Community Living Support ("CLS") homes ("Class Members"); or who 3) earned and received a bonus. ("Class Members").

3. In the early spring of 2020, in response to the Covid-19 pandemic, Defendants required the Plaintiff and Class Members to "shelter in place" and work 24 hours a day, 7 days a week while providing caregiver services to clients in residential caregiver homes, and prohibited them from leaving for several weeks on end ("Covid Lockdown Period").

4. During the Covid Lockdown Period, Defendants refused to pay Plaintiff and Class Members any overtime compensation for the huge number of overtime hours they were required to work each week.

5. Throughout the Recovery Period, Defendants failed to include the non-discretionary bonuses earned by caregivers such as Plaintiff and other Class Members in the calculation of the regular rate for purposes of computing their overtime compensation.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 29 U.S.C. §216(b) and 28 U.S.C. §1331 & §1343.

7. Venue is proper in the Middle District of Tennessee under 28 U.S.C. §1391 because a substantial portion of the events forming the basis of the suit occurred in this District.

## III. PARTIES

8. Plaintiff Bonnie Emery is a resident and citizen of Cookeville, Tennessee. Her Consent Form to join this lawsuit is attached as <u>Exhibit 2</u>.

9. Plaintiff worked as a caregiver for Defendants from December of 2019 through June 8, 2020 in Cookeville, Tennessee.

10. Defendant Home Caregivers of Cookeville, LLC ("Home Caregivers") is a Tennessee Limited Liability Company, with its principal place of business in Cookeville, Tennessee. Home Caregiver's registered agent for service in Tennessee is Defendant Jessica Yepifantsev, Suite 24, 118 S. Dixie Ave., Cookeville, Tennessee 38501-3415.

11. According to its website, www.homecaregiverstn.com: "Home Caregivers…has been a family owned and operated nonmedical home care service provider since 2002. We offer excellent in-home services to clients of all ages who need assistance with the activities of daily living…In-Home Care – Trained caregivers provide medication assistance, homemaker services, personal care services, personal care services, transportation to appointments, and companionship care in your own home. Supported Living – Although most elderly people prefer to remain in the privacy and comfort of their own home, Home Caregivers Inc. offers 24 hour care in one of their fully serviced non-medical homes. With Trained caregivers to assist you every step of the way."

12. Defendant Konstantin Yepifantsev is the Chief Executive Officer, Vice President, and part owner of Home Caregivers, and can be personally served at Defendants' principal place of business at Suite 24, 118 S. Dixie Ave., Cookeville, Tennessee 38501-3415.

13. Defendant Jessica Yepifantsev is the Chief Financial Officer, President, and part owner of Home Caregivers, and can be personally served at Defendants' principal place of business at Suite 24, 118 S. Dixie Ave., Cookeville, Tennessee 38501-3415.

14. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted within the course and scope of their employment with Defendants in committing the acts and conduct complained of herein.

## IV. COVERAGE UNDER THE FLSA

15. At all material times, Defendant Home Caregivers has been an employer and/or joint employer of Plaintiff and Class Members within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

16. At all material times, Defendant Home Caregivers has constituted an enterprise within the meaning of §3(r) of the FLSA, 29 U.S.C. §203(r).

17. At all material times, Defendant Home Caregivers has been an enterprise engaged in commerce, or in the production of goods for commerce, within the meaning of §3(s)(1) of the FLSA because it has had employees engaged in commerce and made an annual gross income of not less than $500,000. 29 U.S.C. §203(s)(1).

18. At all material times, Defendant Konstantin Yepifantsev was an employer and/or joint employer of Plaintiff, as defined by §203(d) of the FLSA, as well as an employer of all other similarly-situated Class Members.

19. At all material times, Defendant Jessica Yepifantsev was an employer and/or joint employer of Plaintiff, as defined by §203(d) of the FLSA, as well as an employer of all other similarly-situated Class Members.

20. At all material times, Plaintiff and Class Members have been employees within the meaning of §3(e)(1) of the FLSA. 29 U.S.C. §203(e)(1).

21. At all material times, the overtime provisions set forth in §7 of the FLSA applied to Defendant Home Caregivers, and to Plaintiff and each Class pursuant to 29 U.S.C. §207.

## V. VIOLATIONS OF THE FLSA

### BACKGROUND

22. At all material times, Plaintiff and Class Members were classified as non-exempt employees by Defendants who were entitled to receive overtime pay.

23. Among other services, Defendant Home Caregivers provides trained caregivers, such as Plaintiff and the Class Members, to assist elderly and handicapped persons in CLS housing, and persons with intellectual and developmental disabilities in ECF housing, with activities of daily living and to live as independently as possible in the community.

24. Defendant Home Caregivers owns and/or leases a number of ECF and CLS residential houses in Putnam and Fentress counties (and possibly other counties) in Tennessee, in which it offers 24 hour companionship services provided by caregivers such as the Plaintiff and Class Members, to the elderly, physically handicapped, and developmentally and intellectually challenged.

25. Prior to the Covid-19 pandemic, Plaintiff and other Class Member caregivers were paid on an hourly basis and had established schedules that ordinarily did not require them to "live-in" in CLS or ECF housing for periods of 24 hours for days or weeks on end, but rather allowed them to rotate in and out of Defendants' CLS and ECF housing at the end of their shifts upon being relieved by other caregivers.

5

## NO OVERTIME PAY FOR COVID LOCKDOWN PERIOD

26. Upon the advent of the Covid-19 pandemic, Defendants required the Plaintiff and other Class Members to "shelter in place" and work 24 hours a day, 7 days a week while providing caregiver services to clients in residential caregiver homes, and prohibited them from leaving during the Covid Lockdown Period.

27. All caregivers, such as Plaintiff and Class Members, had to agree to "shelter in place" and work 24 hours a day, 7 days a week throughout the Covid Lockdown Period, otherwise Defendants would take them off the schedule completely, and they would receive no work assignment and have no income for weeks on end until the Covid Lockdown Period ended.

28. In advance of the Covid Lockdown Period, Defendants required caregivers, and specifically Plaintiff and Class Members, to sign agreements which obligated them to provide caregiver services 24 hour a day, 7 days a week, throughout the Covid Lockdown Period.

29. In order to receive a work assignment during the Covid Lockdown Period, Plaintiff was required to sign such an agreement.

30. A true and accurate copy of the agreement Plaintiff was required to sign in order to receive a work assignment is attached hereto as <u>Exhibit 1</u>.

31. Upon information and belief, the agreements Defendants required other caregiver Class Members to sign were uniformly worded, and identical to the agreement Plaintiff was required to sign attached hereto as <u>Exhibit 1</u>.

32. The agreements Defendants required Plaintiff and other Class Members to sign in order to receive a work assignment all stated, in part, as follows:

> During the COVID-19, commonly known as the Coronavirus Outbreak-Once the state of Tennessee is [sic] issued a "Shelter in Place Order," I agree to work a 14-dy rotation in one

6

of the ECF/CLS homes. I understand that I'm expected and mandated to work 24/7 and be attentive to the needs of the members in the home. I understand during this pandemic the following pay scale is in effect. The following reflects gross amount, before taxes.

Daily Rate -- $215.00

Weekly Rate -- $1,505.00

Biweekly Rate -- $3,010.00

*   *   *

I understand that as [sic] a shelter in place order, remains in effect and I am not permitted to leave the members home during this time.

33. In order to receive a work assignment, Plaintiff signed the agreement attached hereto as <u>Exhibit 1</u> and could not leave her assigned CLS residential home for 31 consecutive days from April 2, 2020, through May 3, 2020.

34. During the Covid Lockdown Period when Plaintiff was confined to her assigned CLS home, she was on duty 24 hours a day, 7 days a week assisting her CLS client with activities of daily living and household chores such as bathing, grooming, personal hygiene and grooming, dressing, toileting, cooking, feeding, ambulation, wheelchair assistance, sweeping, mopping, dusting, changing linens, making beds, washing dishes, laundry, meal prep, and medication reminders.

35. During the Covid Lockdown Period, there was no explicit or implicit agreement between Plaintiff and Defendants, or between Class Members and Defendants, to exclude from the workday bona fide meal periods or a regularly scheduled sleeping period.

36. Defendants expected Plaintiff and Class Members to be on-call throughout each 24-hour shift during the Covid Lockdown Period, and thus required Plaintiff and Class Members to perform 24 hours of work each day.

37. As part of her job duties, Plaintiff was required to check on her CLS client every 2 hours and chart her status including her position and activities throughout each night during the Covid Lockdown Period.

38. Because of her job duties and responsibilities, Plaintiff could not take an uninterrupted period of sleep of 5 hours or more during the Covid Lockdown Period.

39. Because of the nature her job duties and responsibilities, Plaintiff had no regularly scheduled sleep or meal period throughout the Covid Lockdown Period.

40. The duties, responsibilities, on-duty work schedules, and experiences of Class Members during the Covid Lockdown Period are similar to those of Plaintiff set forth above.

41. Defendants paid no overtime pay to Plaintiff or to any Class Member during the Covid Lockdown Period.

## FAILURE TO INCLUDE BONUSES IN THE CALCULATION OF THE REGULAR RATE

42. During most of the Recovery Period, Defendants had a bonus plan in which they agreed to pay bonuses to caregivers, such as Plaintiff, for achieving certain performance goals.

43. "Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay. Most attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category; in such circumstances they must be included in the regular rate of pay." 29 CFR §778.211(c).

8

Case 2:20-cv-00038   Document 1   Filed 07/15/20   Page 8 of 16 PageID #: 8

44. Absent an express statutory exclusion in the FLSA, employers are required to include "all remuneration for employment paid to, or on behalf of, the employee" in determining the regular rate of pay for an employee for use in calculating overtime pay. 29 U.S.C. §207(e).

45. All of the bonuses which Plaintiff and other caregivers received while working for Defendants during the Recovery Period were "non-discretionary" bonuses which Defendants were required to include along with other earnings to determine the Plaintiff's and Class Members' regular rates on which overtime pay was calculated.

46. Plaintiff received at least one non-discretionary bonus while employed as a caregiver for Defendants which was not included in her earnings to determine her regular rate of pay, thus her overtime pay was understated.

47. Throughout the Recovery Period, Defendants excluded the non-discretionary bonuses paid to Plaintiff and other caregivers from the calculation of their regular rate of pay. As a result, on those occasions when Plaintiff and other caregivers received overtime pay during a period when they qualified for a bonus, it was less than they were entitled to by law.

## VI. INDIVIDUAL LIABILITY OF KONSTANTIN AND JESSICA YEPIFANTSEV

48. At all material times, Defendant Konstantin Yepifantsev was Chief Executive Officer, Vice President, and part owner of Home Healthcare who possessed and/or actually exercised authority and control over the terms and conditions of employment, compensation, and policies and procedures applicable to caregivers who worked for Defendants.

49. Defendant Konstantin Yepifantsev directed, authorized and/or approved the implementation, execution, and enforcement of the policy requiring Plaintiff and Class Members to "shelter in place" and work 24 hours a day, 7 days a week for weeks on-end without overtime

compensation for the huge number of overtime hours they were required to work during the Covid Lockdown Period.

50. Defendant Konstantin Yepifantsev directed and/or approved adoption and implementation of the change in compensation and other policies set forth in the agreement which Plaintiff and other Class Members were required to sign in order to receive work assignments during the Covid Lockdown Period, a true and accurate exemplar of which is attached hereto as Exhibit 1.

51. Throughout the Recovery Period Defendant Konstantin Yepifantsev controlled work schedules and conditions of employment, and made and/or approved compensation and pay decisions which affected Plaintiff and all other Class Members, including but not limited to the practice of excluding non-discretionary bonuses from the calculation of their regular rates of pay.

52. Defendant Konstantin Yepifantsev had the power and authority to require and direct that Plaintiff and Class Members receive overtime compensation for the huge number of overtime hours they were required to work during the Covid Lockdown Period, as well as require and direct that non-discretionary bonuses be included in the calculation of their regular rates of pay, but did not do so.

53. Accordingly, Defendant Konstantin Yepifantsev acted "directly or indirectly in the interest of an employer in relation to" the Plaintiff and Class Members over whom she exercised supervisory authority within the meaning of §203(d) of the FLSA, and is thus individually and personally liable for the unpaid wages, liquidated damages, costs and attorneys' fees, and all other relief sought herein.

54. At all material times, Defendant Jessica Yepifantsev was Chief Financial Officer, President, and part owner of Home Healthcare who possessed and/or actually exercised authority

and control over the terms and conditions of employment, compensation, and policies and procedures applicable to caregivers who worked for Defendants.

55. Defendant Jessica Yepifantsev directed, authorized and/or approved the implementation, execution, and enforcement of the policy requiring Plaintiff and Class Members to "shelter in place" and work 24 hours a day, 7 days a week for weeks on-end without overtime compensation for the huge number of overtime hours they were required to work during the Covid Lockdown Period.

56. Defendant Jessica Yepifantsev directed and/or approved adoption and implementation of the change in compensation and other policies set forth in the agreement which Plaintiff and other Class Members were required to sign in order to receive work assignments during the Covid Lockdown Period, a true and accurate exemplar of which is attached hereto as <u>Exhibit 1</u>.

57. Throughout the Recovery Period Defendant Jessica Yepifantsev controlled work schedules and conditions of employment, and made and/or approved compensation and pay decisions which affected Plaintiff and all other Class Members, including but not limited to the practice of excluding non-discretionary bonuses from the calculation of their regular rates of pay.

58. Defendant Jessica Yepifantsev had the power and authority to require and direct that Plaintiff and Class Members receive overtime compensation for the huge number of overtime hours they were required to work during the Covid Lockdown Period, as well as require and direct that non-discretionary bonuses be included in the calculation of their regular rates of pay, but did not do so.

59. Accordingly, Defendant Jessica Yepifantsev acted "directly or indirectly in the interest of an employer in relation to" the Plaintiff and Class Members over whom she exercised

11

supervisory authority within the meaning of §203(d) of the FLSA, and is thus individually and personally liable for the unpaid wages, liquidated damages, costs and attorneys' fees, and all other relief sought herein.

## VI. COLLECTIVE ACTION ALLEGATIONS

60. Plaintiff reasserts and re-alleges the allegations set forth above.

61. The FLSA regulates, among other things, the payment of wages for overtime worked by employees who are engaged in interstate commerce or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §207(a)(1).

62. Plaintiff brings this FLSA collective action on behalf of herself and all other caregivers similarly-situated pursuant to §16(b) of the FLSA (codified at 29 U.S.C. §216(b)), which provides, in pertinent part, as follows:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly-situated.

63. The FLSA Class consists of all current and former caregivers who: a) signed an agreement similar to the agreement Plaintiff signed attached hereto as Exhibit 1; or who b) provided extended 24 hour care 7 days a week while confined to one of Defendants' ECF and/or CLS homes during the Covid Lockdown Period; or who 3) earned and received a bonus during the Recovery Period.

64. Section 13 of the FLSA, codified at 29 U.S.C. §213, exempts certain categories of employees from overtime pay obligations. None of the FLSA exemptions from overtime pay apply to the Plaintiff or to Class Members.

65. The FLSA requires covered employers, such as Defendants, to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours per work week.

66. Plaintiff and Class Members are victims of Defendants' intentional, illegal and uniform compensation policies and practices designed to evade the overtime requirements of the FLSA.

67. Defendants willfully engaged in a pattern of violating the FLSA, 29 U.S.C. § 201 *et seq.*, as described in this Complaint, in ways including, but not limited to, knowingly failing to pay Plaintiff and Class Members overtime compensation during the Covid Lockdown Period, and also failing to pay them at the proper overtime rate throughout the Recovery Period.

68. Defendants' conduct constitutes willful violations of the FLSA within the meaning of 29 U.S.C. §255.

69. Defendants are liable under the FLSA for failing to properly compensate Plaintiff and Class Members.

70. Plaintiff and Class Members are similarly-situated to each other because they were each: 1) required to sign an agreement identical and/or similar to Exhibit 1 in order to receive a work assignment; 2) subject to the same illegal compensation policies and practices; 3) classified as non-exempt; 4) confined to Defendants' ECF and/or CSL homes 24 hours a day, 7 days a week while

providing around-the-clock caregiver services to clients during the Covid Lockdown Period; 5) and were required to perform the same job duties throughout the Covid Lockdown Period and Recovery Period.

71. There are numerous similarly-situated current and former employees of Defendants who have suffered from Defendants' common and uniform policies, practices and/or procedures of not paying Plaintiff and Class Members proper overtime, and who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in this action. These similarly-situated employees are known to Defendants, and are readily identifiable through Defendants' records.

72. Defendants have not acted in good faith or with reasonable grounds to believe that their failure to pay overtime to Plaintiff and Class Members during the Covid Lockdown Period, or their failure to include non-discretionary bonuses with other compensation to calculate their regular rates of pay during the Recovery Period, was not a violation of the FLSA.

73. Plaintiff and Class Members are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime compensation as permitted by §16(b) of the FLSA. 29 U.S.C. §216(b). Alternatively, should the Court find that Defendants acted in good faith and with reasonable grounds to believe they were complying with the FLSA, Plaintiffs and all similarly-situated Class Members are entitled to an award of prejudgment interest at the applicable legal rate.

74. As a result of the aforementioned violations of the FLSA's overtime provisions, overtime compensation has been unlawfully withheld by Defendants from the Plaintiff and Class

Members. Accordingly, Defendants are liable to Plaintiff and Class Members for unpaid overtime compensation under §16(b) of the FLSA (codified at 29 U.S.C. §216(b)), together with an additional amount as liquidated damages, pre- and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## VII. PRAYER FOR RELIEF

75. Wherefore, Plaintiff, on behalf of herself and all other similarly-situated Class Members, respectfully requests that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the FLSA Class and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly-situated Class Members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual consents to join this lawsuit pursuant to 29 U.S.C. §216(b);

b. An award of unpaid wages, including all overtime compensation due under the FLSA;

c. An award of liquidated damages as a result of the Defendants' failure to exercise good faith in failing to pay lawful overtime compensation pursuant to 29 U.S.C. §216;

d. An award of prejudgment and post-judgment interest;

e. An award of costs and expenses of this action, together with reasonable attorneys' fees; and,

f. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

**DICKINSON WRIGHT PLLC**

<u>/s/ Peter F. Klett</u>
Peter F. Klett, TN Bar #12688
Joshua Burgener, TN Bar #29077
Fifth Third Center
424 Church Street, Suite 1401
Nashville, TN 37219-2392
Tel.:   615.244.6538
Fax:    844-670-6009
pklett@dickinsonwright.com
jburgener@dickinsonwright.com

**HOWELL LAW, PLLC**

<u>/s/ Trevor Howell</u>
Trevor Howell, TN Bar # 9496
P. O. Box 158511
Nashville, TN 37216
Tel.: 615.406.1416
Fax: 615.373.8206
trevor@howelllawfirmllc.com

*Attorneys for Plaintiffs and Putative Collective Class*

4832-5362-7075 [93418-1]